FIRST NATIONAL BANK OF DIETE-
RICH, f/k/a First State Bank of
Red Bud, Respondent,

v.

POINTE ROYALE PROPERTY
OWNERS' ASSOCIATION,
INC., Appellant.

No. SC 95865

Supreme Court of Missouri,
en banc.

Opinion issued April 4, 2017

Karl Finkenbinder and Jacqueline Bryant, Schenewerk & Finkenbinder LLC, Branson, for property owners' association.

Richard L. Schnake, Neale & Newman LLP, Springfield, Donald W. Ingrum, Branson, for the bank.

Paul C. Wilson, Judge

Defendant Pointe Royale Property Owners' Association (the "POA") appeals from a partial judgment entered in favor of Plaintiff First National Bank of Dieterich, f/k/a First State Bank of Red Bud (the "Bank"). The trial court resolved the Bank's first count in its favor, declaring that the Bank was not obligated to pay past due assessments by the POA on properties the Bank purchased at a foreclosure sale. The trial court certified this order for immediate appeal under Rule 74.01(b) and reserved judgment on Bank's second count, i.e., slander of title, until after this appeal of the Bank's first count is concluded. Because the trial court's partial judgment did not dispose of a distinct judicial unit, however, it was not a "final judgment" for purposes of section 512.020(5), RSMo Supp. 2004. Accordingly, this Court has no authority to review this judgment, and the Bank's appeal must be dismissed.

## Background

The Pointe Royale subdivision is a common interest community governed by the POA and a recorded declaration of covenants (the "POA Declaration"). The POA Declaration governs the relationship between the developer of the community and all residential and condominium owners in the community. Under the POA Declaration, the POA is entitled to collect assessments from all property owners for the benefit of the community. Article X, section 1 of the POA Declaration provides that "each Owner of a Lot ... shall be deemed to covenant and agree to pay to the Association: (1) Annual Assessments, and (2) Special Assessments."

To ensure these assessments are paid, the POA Declaration gives the POA two separate and distinct remedies: (1) to place a lien on the property in the amount of the assessment, or (2) to sue the property owner directly to collect the assessment as a personal obligation. Article X, section 7 of the POA Declaration states: "If Assessments have become delinquent, such Assessments shall bind property in the hands of the then Owner, his heirs, devisees, personal representatives and assigns. The personal obligation of the Owner to pay such Assessments shall remain his personal obligation and shall pass to successors in title."

The Bank provided loans to owners of eight condominium units within the Pointe Royale subdivision. Each of these loans was secured by a deed of trust. In time, all eight of these owners became delinquent on their loans to the Bank and failed to make timely payments on the POA's assessments. As provided in the POA Declaration, the POA filed liens against all eight

properties for the past due assessments. The Bank foreclosed on its deeds of trust and—at the subsequent foreclosure sale—purchased all eight properties. Thereafter, the POA demanded payment from the Bank for all new assessments on the properties it purchased. The POA also demanded the Bank pay all assessments that were past due at the time the Bank purchased the properties at the foreclosure sale.

The Bank paid all of the assessments but filed a lawsuit against the POA. In its lawsuit, the Bank sought relief in two counts: (1) a declaratory judgment action seeking a declaration that the Bank did not owe the assessments that were past due when it purchased the properties and, therefore, that the Bank was entitled to a refund of the amounts it had paid; and (2) an action for monetary damages caused by the POA's slander of the Bank's title to the eight properties.

On June 28, 2013, the Bank's lawsuit was tried to the bench. As to Count I, the trial court declared that the liens regarding the POA's pre-foreclosure assessments had been extinguished by the foreclosure. In addition, the trial court declared there was no basis to hold the Bank personally liable for those assessments and, therefore, entered judgment ordering the POA to refund those amounts to the Bank. As to Count II, the trial court noted the Bank had stated a cause of action for slander of title but adjudged that, "[p]ursuant to the agreement of counsel, if the Judgment entered herein is appealed, the Court will reserve Count II of [the Bank's] petition for separate trial depending on the outcome of this case on appeal." The POA timely appealed the judgment on Count I, and this Court granted transfer following an opinion in the court of appeals.

## Analysis

■■■ This Court has an obligation, acting *sua sponte* if necessary, to determine its authority to hear the appeals that come before it. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). " 'The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists.' " *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011) (quoting *State ex rel. Coca–Cola Co. v. Nixon*, 249 S.W.3d 855, 859 (Mo. banc 2008)). Though there are many statutes governing the right to appeal, the only statute even potentially applicable to the present case is section 512.020(5). This statute provides, in relevant part:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any ... (5) *Final judgment* in the case or from any special order after final judgment in the cause ....

§ 512.020 (emphasis added).

■■■ Generally, a final judgment is defined as one that resolves "all issues in a case, leaving nothing for future determination." *Transit Cas. Co. ex rel. Pulitzer Publ'g Co. v. Transit Cas. Co. ex rel. Intervening Emps.*, 43 S.W.3d 293, 298 (Mo. banc 2001) (internal citation omitted). As a result, any judgment that resolves only part of a claim, or that resolves some of the claims pending in a lawsuit but leaves others unresolved, generally is not a "final judgment" for purposes of section 512.020(5).

Rule 74.01(b), utilized by the trial court here, provides a limited exception to this finality requirement. If "more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved," Rule 74.01(b)

authorizes a trial court to enter judgment on one or more—but fewer than all—of the claims in an action and make that judgment a "final judgment" for purposes of section 512.020(5) by certifying that there is no just reason to delay the appeal of that judgment.

■■ This Court has no authority to grant a right of appeal beyond that given by statute, however, and the exception provided for in Rule 74.01(b) is carefully circumscribed to implement—but not extend—section 512.020(5). To that end, the "effect of Rule 74.01(b) is to permit severance of any *unrelated substantive claim* for relief of the parties and to allow appeal of a final judgment on those severed claims." *Buemi*, 359 S.W.3d at 21 (emphasis added). To ensure against unintended and unauthorized expansions of this rule, this Court repeatedly has held that a partial judgment cannot be certified as final for purposes of appellate review unless it disposes of at least one distinct "judicial unit." *Gibson*, 952 S.W.2d at 244.

A distinct "judicial unit" is defined as "the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." Further, an order addressing "some of several alternative counts, each stating only one legal theory to recover damages for the same wrong, is not considered an appealable judgment while the other counts remain pending because the counts are concerned with a single fact situation." "*It is 'differing,' 'separate,' 'distinct' transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim.*"

*Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801–02 (Mo. banc 2012) (quoting *Gibson*, 952 S.W.2d at 244) (emphasis added) (cita-

tions omitted); *see also Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 304 n.5 (Mo. banc 2011) ("so long as there are differing, separate, [and] distinct transactions or occurrences that present a separately appealable judgment, a distinct judicial unit exists") (quotation marks and citations omitted).

Under these precedents, the judgment before this Court does not resolve a distinct "judicial unit." The Bank's claim for declaratory judgment (which the judgment resolves) and the Bank's claim for money damages due to the Bank's alleged slander of title (which the judgment does not resolve) arise out of the same transaction or occurrence. As though to emphasize this point, Count II of the Bank's petition setting forth the Bank's slander of title claim begins by "[i]ncorporat[ing] by reference the allegations [in] the following paragraphs of COUNT I [Declaratory Judgment] as though fully set forth herein: [1–9, 13–14]."

In *Gibson*, this Court expressly relied on such overlapping factual allegations in holding that a judgment that disposed of certain claims for relief arising out of a set of facts but not other claims for different relief arising out the same set of facts was not a "final judgment" for purposes of section 512.020(5) notwithstanding the trial court's certification under Rule 74.01(b).

Here the circuit court did not dismiss the Gibsons' counts for battery, negligent infliction of emotional distress, and intentional infliction of emotional distress against Brewer, which remain pending in the trial court. The other counts purportedly certified as final and appealable—breach of fiduciary duty and conspiracy—*expressly incorporate the same facts* as the counts pending in the circuit court. The pending counts clearly arise from the same set of facts, and the same transactions and occur-

rences, as the counts supposedly appealed. Accordingly, the trial court did not resolve a single, distinct judicial unit, and its judgment is neither final nor appealable as to the claims against Brewer.

*Gibson*, 952 S.W.2d at 244–45 (emphasis added).

In *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446 (Mo. banc 1994), the plaintiffs asserted claims for both declaratory and injunctive relief arising out of the same basic facts. Like the present case, the trial court entered judgment on the plaintiffs' claims for declaratory judgment but deferred addressing the plaintiffs' claims for injunctive relief pending appeal on the resolved claims. *Id.* at 452. This Court dismissed the appeal of the declaratory judgment because it was not final for purposes of section 512.020(5). *Id.* at 454–55.

Finally, in *Ndegwa*, a case with a marked resemblance to the present case, the Court stated:

In the current case, multiple counts set forth in Ndegwa's petition are ***different legal theories seeking to recover based on the same underlying transaction***— the tax sale of the property to KSSO. Counts III and V seek quiet title to the property from different parties but, ultimately, Ndegwa can only receive quiet title to the property by succeeding on both of these counts. Count IV is also interrelated to these in that it addresses the property as it was misrecorded on IndyMac's deed of trust. Further, Ndegwa's additional counts requesting ejectment and a preliminary injunction both relate to the tax sale and the alleged wrongful transfer of the property to KSSO. Because Count III clearly arises out of "the same set of facts, and the same transactions and occurrences" as the pending counts listed above, the circuit court's order "did not resolve a sin-

gle, distinct judicial unit," and, therefore, is neither a final nor appealable judgment.

*Ndegwa*, 371 S.W.3d at 802 (quoting *Gibson*, 952 S.W.2d at 244–45).

Here, Count I of the Bank's petition sought a declaratory judgment that it was not liable for the POA assessments that were past due when the Bank purchased the properties at the foreclosure sale. In Count II, the Bank sought money damages for the "cloud" on, or "slander" of, its title to these properties caused by the POA asserting that the Bank (and, by extension, all of the Bank's "successors in title") were personally liable for these past due assessments. To be sure, these two counts seek different legal remedies and the count for slander of title may even require evidence of the Bank's damages that would not be relevant to the declaratory judgment count. However, because both counts "clearly arise[ ] out of 'the same set of facts, and the same transactions and occurrences' ... the circuit court's order 'did not resolve a single, distinct judicial unit,' and, therefore, is neither a final nor appealable judgment." *Id.* (quoting *Gibson*, 952 S.W.2d at 24–45). Accordingly, this Court has no authority to review the trial court's judgment resolving Count I alone.

## Conclusion

The appeal is dismissed.

Breckenridge, C.J., Fischer, Stith, Draper and Russell, JJ., concur.