

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

TRACY SYKORA, ASHLEY SYKORA, )
AND MATTHEW SYKORA, )
                                )
           Respondents, )
                                )
v. )      WD86567 (Consolidated with
                                )      WD86584)
FARMERS INSURANCE )
COMPANY, INC., )      Opinion filed: September 17, 2024
                                )
           Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF
JACKSON COUNTY, MISSOURI
THE HONORABLE KENNETH GARRETT, JUDGE**

Division Two: W. Douglas Thomson, Presiding Judge,
Karen King Mitchell, Judge and Janet Sutton, Judge

Farmers Insurance Company appeals from the trial court's grant of summary judgment in favor of Tracy, Ashley, and Matthew Sykora on their claim for equitable garnishment. Because Farmers does not appeal from a final judgment, we lack jurisdiction and dismiss Farmers's appeal.

## I. FACTUAL AND PROCEDURAL HISTORY

This is Farmers's second attempt to appeal from the trial court's grant of summary judgment in favor of the Sykoras for equitable garnishment. We set forth the relevant facts in Farmers's first appeal:

On April 21, 2014, Joseph Surratt drove his vehicle while intoxicated and struck George Sykora's vehicle, causing George's death.[1]  Joseph later pled guilty to first-degree involuntary manslaughter and was sentenced to ten years' imprisonment.  George's wife Tracy Sykora and their two children sued Joseph for wrongful death and obtained a judgment awarding $22,500,000 in damages.  The wrongful death action initially named Chad and Kristy Surratt (Joseph's parents) as defendants as well under the theory of negligent entrustment with respect to Joseph.  The petition alleged that, though he was over 18 years old at the time, Joseph was living with Chad and Kristy and was unable to make decisions for himself as a result of drug usage, and Chad and Kristy were aware of and enabled Joseph's drug usage.

At the time of George's death, Chad and Kristy had an automobile insurance policy with Farmers.  The policy identified Chad and Kristy as the "named insured[s]," with an address [in] Lee's Summit, Missouri.  The policy did not identify Joseph by name as a "household driver," but it did provide:

> We will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person and **property damage** arising out of the ownership, maintenance or use of a **private passenger car**, a **utility car**, or a **utility trailer**.

> We will defend any claim or suit asking for these **damages**.  We may settle when we consider it appropriate.  We will not defend any suit or make additional payments after we have paid the limit of liability for coverage.
> …
> **Insured person** as used in this part means:

> 1. You or any **family member**.

The policy defines "family member" as follows: "**Family member** means a person related to you by blood, marriage or adoption who is a resident of your household."

In conjunction with the wrongful death suit, Sykora issued a demand letter to Farmers to pay out the limit of its policy.  Farmers rejected Sykora's demand, asserting that Joseph was not covered by Chad and Kristy's policy because Joseph was not a resident of [their Lee's Summit home] at the time of the accident.

---

[1] Because a number of persons involved in this litigation share the same last names, we will call certain individuals by their first name.  No disrespect or undue familiarity is intended.

After obtaining the $22,500,000 wrongful death judgment against Joseph, Sykora filed an equitable garnishment action against Farmers, arguing that Joseph was covered by Chad and Kristy's policy at the time of George's death and that Farmers had a duty to both defend and indemnify Joseph. Sykora argued that, because the underlying wrongful death judgment included a finding of fact that Joseph was a resident of [the Lee's Summit home] at the time of the accident, Farmers was estopped from contesting or otherwise challenging the underlying judgment. Both parties moved for summary judgment, arguing about the legal issue of Farmer's ability to contest Joseph's residency. The court below denied Farmers's motion for summary judgment and granted Sykora's motion, specifically determining that Farmers had a duty to defend Joseph in the wrongful death claim and, by failing to do so, it could not subsequently challenge the residency determination made in the wrongful death judgment. The court below did not, however, make any determination as to the damages necessitated by its finding of Farmers's liability.

*Sykora v. Farmers Ins. Co.*, 642 S.W.3d 381, 382-83 (Mo. App. W.D. 2022) (emphasis in original). Farmers appealed the trial court's judgment finding it had a duty to defend Joseph. We dismissed that appeal for lack of a final judgment. *Id.* at 384-85.

The Sykoras filed a motion to amend their pleadings to add a new cause of action – bad faith failure to settle – against Farmers. The Sykoras alleged they had been properly assigned the bad faith failure to settle claim pursuant to Missouri law. Farmers filed its answer to the petition. Farmers also filed a motion for partial summary judgment on the issue of damages on the Sykoras' equitable garnishment claim, arguing that, while it disputed the trial court's judgment finding against it, damages were limited to the $500,000 limit set forth in the policy. The Sykoras filed a cross-motion for summary judgment on the same issue.

3

On January 31, 2023, the trial court entered a "Decree/Order" that ruled on various pending motions, including Farmers's partial motion for summary judgment and the Sykoras's corresponding cross-motion for summary judgment. On the issue of damages, the trial court granted Farmers's partial motion for summary judgment and denied the Sykoras's cross-motion for summary judgment.

After the trial court entered that order, Farmers filed a "Motion to Alter, Amend, or Modify Decree/Order" which in part asked the trial court to "find that there is no just reason for delay pursuant to Rule 74.01(b) and enter judgment on the claim by [the Sykoras] for equitable garnishment under Section 379.200."

On August 4, 2023, the trial court entered an "Amended Decree/Order" that addressed a number of pending motions, including Farmers's motion to alter, amend, or modify the January 31 "Decree/Order."

Then, after a hearing on August 22, 2023, the trial court entered a "Second Amended Decree/Order" on September 8, 2023 in which the trial court stated in part, "It is hereby ORDERED that said "Decree/Order" of January 31, 2023 and said "Amended Decree/Order" of August 4, 2023 are VACATED and AMENDED by this Order, Amended Order, and Judgment."[2] (L.F. 299). Thereafter, the trial court entered the following "Judgment Against Farmers: Count I:"

---

[2] "The general rule is that when an order or judgment is vacated, the previously existing status is restored and the situation is the same as though the order or judgment had never been made. The matters in controversy are left open for future determination." *State ex rel. Office of Public Counsel v. Public Serv. Com'n of Mo.*, 266 S.W.3d 842, 843

Therefore, finding no just reason for delay pursuant to Rule 74.01(b), the Court hereby enters JUDGMENT against Farmers and in favor of the plaintiffs on Count I of the plaintiffs' second amended petition for:

A.   Five Hundred Thousand and 00/100 Dollars ($500,000), which represents the coverage limit of the Farmers policy, plus

B.   One Hundred Seventy-Nine Thousand Three Hundred Eighty-Three and 56/100 Dollars ($179,383.56), which represents post-judgment interest at a rate of 6.75% per year on the $500,000 coverage limit from the date the underlying judgment was entered against Joseph Surratt to the date of the entry of this Order, Amended Order, and Judgment,

for a total judgment of Six Hundred Seventy-Nine Thousand Three Hundred Eighty-Three and 56/100 Dollars ($679,383.56); and

C.   post-judgment interest on said total judgment against Farmers at a rate of 9% per year following the entry of this judgment until satisfaction.

Farmers timely appealed this Judgment, and now argues that this Court has jurisdiction to hear its appeal because the trial court certified the judgment final for the purposes of appeal pursuant to Rule 74.01(b).

## II. ANALYSIS

This Court has an obligation "to determine its authority to hear the appeals that come before it." *First Nat'l Bank of Dieterich v. Pointe Royale Property Owners' Assoc., Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997)). "'A prerequisite to appellate review is that there be a final judgment.'" *Halderman v. City of Sturgeon*, 592 S.W.3d 824, 828 (Mo. App. W.D. 2020) (quoting *Gibson*, 952 S.W.2d at 244). In

---

(Mo. banc 2008). Therefore, we give no effect to the trial court's August 4, 2023 order because the trial court vacated that order on September 8, 2023.

5

its simplest terms, "[a] final judgment 'resolves all issues in a case, leaving nothing for future determination.'" *Id.* (quoting *First Nat'l Bank of Dieterich*, 515 S.W.3d at 221).

Rule 74.01(b) "provides a limited exception to [this Court's jurisdictional] finality requirement." *First Nat'l Bank of Dieterich*, 515 S.W.3d at 221. Rule 74.01(b) states:

> (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

In cases involving multiple claims, "Rule 74.01(b) authorizes a trial court to enter judgment on one or more – but fewer than all – of the claims in an action and make that judgment a 'final judgment' for purposes [of appeal] by certifying that there is no just reason to delay the appeal of that judgment." *First Nat'l Bank of Dieterich*, 515 S.W.3d at 221-22.

"The circuit court's designation is not conclusive, however." *Halderman*, 592 S.W.3d at 828. "'[T]he question of whether a judgment is eligible for certification under Rule 74.01(b) is a question of law on which the circuit court has no discretion; only the question of whether an eligible judgment should be certified under Rule 74.01(b) is left to the sound exercise of the circuit court's discretion.'"

6

*Kelly v. Boone Cnty.*, 646 S.W.3d 739, 742 (Mo. App. W.D. 2022) (quoting *Murphy v. Steiner*, 631 S.W.3d 624, 629 (Mo. App. W.D. 2021)). A trial court's Rule 74.01(b) certification is "effective only when the order disposes of a distinct 'judicial unit.'" *Gibson*, 952 S.W.2d at 244.

This Missouri Supreme Court has given "judicial unit" two meanings. The first "meaning of 'judicial' unit is a judgment that disposes of all claims by or against one or more – but fewer than all – of the parties." *Wilson v. City of St. Louis*, 600 S.W.3d 763, 769 (Mo. banc 2020). The second meaning "is a judgment that resolves one or more claims that are ***distinct*** from those claims that remain to be resolved." *Id.* (emphasis in original). Therefore, in this case, we are tasked with determining whether the trial court's Rule 74.01(b) certification is effective because it disposes of a distinct "judicial unit" either by disposing of all claims by or against one of the parties or by disposing of a claim that is distinct from the remaining claims.

First, it is clear the trial court's September 8, 2023 judgment does not dispose of all claims by or against one of the parties. While the trial court resolved the equitable garnishment claim pending between the Sykoras and Farmers, the same parties continue to have a bad faith claim pending between them.

Farmers argues that this case is similar to *Wright v. Nash*, 652 S.W.3d 246 (Mo. App. W.D. 2022). There, this Court determined that the trial court's Rule 74.01(b) certification was proper where the trial court issued judgment on a plaintiff's equitable garnishment claim while the defendant's bad faith failure to

settle claim remained pending. *Id.* at 252 n.5. Farmers's argument misunderstands our analysis in *Wright*.

In that case, the plaintiff filed an equitable garnishment action against Key Insurance Company after the plaintiff was involved in a car accident with the defendant, who the plaintiff alleged was insured by Key Insurance Company. *Id.* at 248-49. Key Insurance denied that the defendant was its insured, and the plaintiff received an award of $4.5 million against the defendant. *Id.* at 251. The plaintiff then filed an equitable garnishment action against Key Insurance and the defendant to enforce the insurance policy and recover the insurance proceeds. *Id.* The defendant filed a cross-claim against Key Insurance Company for bad faith failure to settle and breach of contract. *Id.* The trial court found against Key Insurance Company on plaintiff's claim for equitable garnishment and certified its judgment as final pursuant to Rule 74.01(b). *Id.*

This Court determined that the trial court's Rule 74.01(b) certification was proper "because it disposed of all claims by [the plaintiff] (the equitable garnishment claims against [the defendant] and Key Insurance). Only [the defendant's] claims for bad faith failure to settle and breach of contract against Key Insurance remain pending." *Id.* at 252 n.5. This Court determined that the trial court "had discretion to certify its Amended Judgment for immediate appeal."

The key fact in *Wright* that makes it readily distinguishable from the case at hand is that the claims against Key Insurance for equitable garnishment and bad faith failure to settle were brought by *different parties*. Here, both the claim for

8

equitable garnishment and for bad faith failure to settle are brought by the Sykoras against Farmers. The trial court in *Wright* had the discretion to certify its judgment for appeal pursuant to Rule 74.01(b) because its judgment met the first definition of "judicial unit:" it disposed of all of one party's claims. The same is not true in this case. The Sykoras allege that they have been assigned Joseph's bad faith failure to settle claim - and that claim remains pending between the Sykoras and Farmers. Accordingly, the trial court's Rule 74.01(b) certification in this case does not meet the first definition of "judicial unit" because it does not dispose of all claims by or against one party.

Nor does the trial court's September 8, 2023 judgment meet the second definition of "judicial unit" by disposing of a claim that is "distinct" from the remaining claims. The Missouri Supreme Court has described a "distinct" claim as follows:

> The second alternative meaning of "judicial unit" is a judgment that resolves one or more claims that are *distinct* from those claims that remain to be resolved. Again, in *Gibson*, this Court held a judgment dismissing two claims did not dispose of a "distinct" judicial unit of claims because the dismissed claims "expressly incorporate the same facts as the counts pending in the circuit court." *Gibson*, 952 S.W.2d at 244. *See also First Nat'l Bank of Dieterich*, 515 S.W.3d at 222 (explaining the judgment was not eligible for certification under Rule 74.01(b) because "[t]he Bank's claim for declaratory judgment (which the judgment resolves) and the Banks' claim for money damages due to the Bank's alleged slander of title (which the judgment does not resolve) arise out of the same transaction or occurrence"). In other words, a judgment resolves a "distinct" judicial unit if it resolves claims that do not arise "from the same set of facts, and the same transactions and occurrences, as the counts" yet to be disposed of in the circuit court. *Gibson*, 952 S.W.2d at 244. *See also First Nat'l Bank of Dieterich*, 515 S.W.3d at 222 ("[T]he 'effect of Rule 74.01(b) is to permit severance of any *unrelated substantive claim* for relief of the parties and to allow appeal of a final judgment on those severed claims.'") (quoting *Buemi*,

359 S.W.3d at 21); *Ndegwa*, 371 S.W.3d at 802 ("It is 'differing,' 'separate,' 'distinct' transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim.") (quoting *Gibson*, 952 S.W.2d at 244); *Comm. for Educ. Equal.*, 878 S.W.2d at 451 ("[C]laims are considered separate if they require proof of different facts and the application of distinguishable law, subject to the limitation that severing the claims does not run afoul of the doctrine forbidding the splitting of a cause of action."). To be clear, distinctness may exist even though there is some connection (i.e., some shared facts or circumstances) between the resolved and unresolved claims. *See Comm. for Educ. Equal.*, 878 S.W.2d 452 (analyzing the claims in *International Minerals & Chemical Corp. v. Avon Products*, 817 S.W.2d 903 (Mo. banc 1991), and noting that a judgment resolving some but not all claims was eligible to be certified for immediate appeal because, "[e]ven though the indemnity claim and the patent infringement claim were connected, each involved *different legal theories and different operative facts*.") (emphasis added).

*Wilson*, 600 S.W.3d at 770-71 (emphasis in original).

In this case, the Sykoras' two claims – the equitable garnishment claim (which the judgment resolves) and the bad faith failure to settle claim (which the judgment does not resolve) – arise "from the same set of facts, and the same transactions and occurrences". *Gibson*, 952 S.W.2d at 244. First, both of the Sykoras' claims arise "from the same set of facts." Both counts in the Sykoras' second amended petition allege that Joseph caused George Surratt's death; the Sykoras obtained a judgment against Joseph; and Farmers is obligated to pay that judgment pursuant to the Policy. (L.F. 231).

Both claims also involve "the same transactions and occurrences." The Sykoras allege in both counts that Farmers carried an insurance policy that covered Joseph; Farmers was made aware of the Sykoras' claim and judgment against Joseph; and Farmers wrongfully denied Joseph coverage pursuant to that policy.

10

The Sykoras seek damages on both claims related to Farmers alleged wrongful denial of insurance coverage. Both claims also involve similar legal theories: that Farmers knew or should have known that its Policy covered Joseph Surratt, but Farmers failed to provide Surratt with a defense, and Farmers is now liable for damages arising from their failure to provide Surratt with a defense.

Further, because the Sykoras' claims for equitable garnishment and bad faith failure to settle are based on the same facts, transactions, and occurrences, any decision we make on Farmers' current appeal would necessarily affect the Sykoras' pending claim for bad faith failure to settle.[3] Such is contrary to the purpose of the finality rule, which "is 'to avoid redundant review of multiple appeals based on the same underlying facts and similar legal issues.'" *Jefferson City Med. Grp., P.C. v. Brummett*, 665 S.W.3d 380, 384 (Mo. App. W.D. 2023) (quoting *Comm. for Educ. Equality v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994)). Therefore, the Sykoras' claims are not "distinct" for the purposes of Rule 74.01(b) and thus the trial court's ruling on the Sykoras' equitable garnishment claim is not eligible for Rule 74.01(b) certification.

Because the trial court's September 8, 2023 judgment does not dispose of a "judicial unit," it is not eligible for Rule 74.01(b) certification. As such, this Court

---

[3] All of Farmers's points in this appeal argue, for various reasons, that Joseph was not insured under his parents' policy and thus Farmers does not have a duty to defend or indemnify him. Whether Joseph is an insured under the policy at issue directly affects the Sykoras' remaining bad faith failure to settle claim, which they allege Joseph assigned them. If we address Farmers's points on appeal now, we would be deciding both facts and legal issues that will affect the outcome of the Sykoras' bad faith failure to settle claim. Therefore, the facts and circumstances of both claims are intermingled and would be best addressed together, when the trial court issues its final judgment.

does not have jurisdiction over this appeal because there is no final judgment. We therefore lack appellate jurisdiction and the appeal must be dismissed.

### III. CONCLUSION

The appeal is dismissed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.